IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEN JOHANSEN, | : | |
| | : | Case No. 2:16-cv-121 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Deavers |
| HOMEADVISOR, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter comes before the Court on HomeAdvisor, Inc.'s Motion to Dismiss for lack of personal jurisdiction. (Def.'s Mot. to Dismiss, Doc. 18). HomeAdvisor contends that the Court lacks jurisdiction due to the absence of "sufficient minimum contacts" between the company and the forum state of Ohio. Based on the record before this Court, HomeAdvisor's Motion to Dismiss is **GRANTED.**

**I. BACKGROUND**

In this putative class action, Ken Johansen alleges that a pair of companies—HomeAdvisor and One Planet Ops, Inc.—worked in tandem to violate the Telephone Consumer Privacy Act of 1991 ("TCPA"), codified at 42 U.S.C. § 227, by placing telephone calls to a number that he listed on the National Do Not Call Registry. (Pl.'s Compl., Doc. 1). Johansen seeks to represent a nationwide class of similarly situated individuals who received telemarketing calls from HomeAdvisor and One Planet. (*Id.*). Johansen requests that the Court name him as class representative, enjoin Home Advisor and One Planet from engaging in the allegedly illegal telemarketing activity, and award class members $500 for each negligent violation of the TCPA and $1,500 for each knowing violation. (*Id.*).

1

Johansen is a resident of Ohio and has listed his home telephone number on the National Do Not Call Registry since 2003. (*Id.* at ¶¶ 5, 18). Nevertheless, on three separate dates in December 2015, he received telemarketing calls at that number. (*Id.* at ¶ 20). Johansen alleges that One Planet made the offending calls in connection with a contract that One Planet had with HomeAdvisor. (*Id.* at ¶¶ 21-22). Johansen believes that, under their contract, One Planet made the calls to generate sales leads for HomeAdvisor and that, as a result, HomeAdvisor is vicariously liable for any TCPA violations stemming from the calls. (*Id.* at ¶¶ 21-35). Johansen maintains that he was not a customer of One Planet or HomeAdvisor, and that he had not provided either defendant with his personal information or telephone number. (*Id.* at ¶ 24).

HomeAdvisor, which is incorporated in Delaware and headquartered in Colorado, contends that Johansen has it all wrong insofar as the offending calls are concerned. (Doc. 18). HomeAdvisor, which submitted a pair of supporting declarations from HomeAdvisor and One Planet executives, admits that it operates a business that connects "consumers looking for home services with prescreened and customer-rated home improvement, maintenance[,] and repair service professionals." (*Id.* at PageID 58). HomeAdvisor also admits that One Planet "operates an online marketing platform for the acquisition of locally-targeted and category-specific leads," and that HomeAdvisor contracted with One Planet for the option to purchase certain sales leads. (*Id.* at PageID 58-59). But HomeAdvisor denies that One Planet itself made the offending calls or that HomeAdvisor or One Planet had any control over the party that *did* make the offending calls. (*Id.* at PageID 58-60). Instead, HomeAdvisor contends that another entity altogether, Lead House, LLC, made the offending calls. (*Id.* at PageID 60). HomeAdvisor insists that Lead House serves as an independent contractor to One Planet, over whom neither One Planet nor HomeAdvisor had any direction or control. (*Id.* at PageID 59-60).

According to the declarations from HomeAdvisor and One Planet executives, One Planet serves only as a middleman. The company generates leads through the websites of its operating companies and by "contracting with third parties for the purchase of lead data," but One Planet itself does not place telemarketing calls to generate those sales leads. (*Id.* at PageID 59). Once acquired, One Planet then provides interested companies with the opportunity to purchase the leads it generates. (*Id.*). One Planet maintains a real-time digital "Marketplace" as a forum in which various entities can bid for the consumer information One Planet has amassed. (*Id.*).

One Planet acquires many of the leads it later sells from various third parties, including Lead House. (*Id.*). One Planet does not "direct or control the manner by which Lead House generates leads" but, instead, allegedly arranges to receive from Lead House only those leads that have been "generated from inquiries from individuals who completed an online form hosted by Lead House." (*Id.* at PageID 59-60). Included on this form is a confirmation from the consumer consenting to receive marketing telephone calls. (*Id.* at PageID 60). One Planet therefore limited the leads it would market from Lead House to those where the consumer had consented to be contacted. (*Id.*).

HomeAdvisor, unlike One Planet, has no direct business relationship with Lead House. (*Id.*). HomeAdvisor merely purchases leads that One Planet puts out to bid—some of which originated from Lead House. (*Id.*). Indeed, Home Advisor disclaims any knowledge of Lead House's existence before this suit was filed. (*Id.*).

According to HomeAdvisor, Lead House submitted "lead information for [Johansen]" to One Planet on December 28, 2015, and HomeAdvisor ultimately purchased that lead from One Planet through its Marketplace. (*Id.*). The calls from December 11, 12, and 17, therefore, presumably were made by Lead House, and not One Planet or HomeAdvisor. (*Id.*).

In February 2016, Johansen sued HomeAdvisor and One Planet, seeking to enforce the consumer-privacy provisions of the TCPA. (Doc. 1). Johansen alleged that the phone calls he received were placed by One Planet on behalf of HomeAdvisor. (*Id.*). Johansen argued that he and the putative class members are entitled to injunctive relief and statutory damages as a result of the alleged TCPA violations. (*Id.*). HomeAdvisor subsequently filed a motion to dismiss for lack of personal jurisdiction, citing a lack of minimum contacts with the forum state. (Doc. 18). The matter is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of a claim based on the lack of personal jurisdiction. When challenged, the plaintiff bears the burden of establishing personal jurisdiction over each defendant "independently." *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quotation omitted); *see also Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

District courts have three options for ruling on a motion to dismiss under Rule 12(b)(2): (1) they may "decide the motion upon the affidavits alone"; (2) they may "permit discovery in aid of deciding the motion"; or (3) they may "conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The method selected affects the burden of proof the plaintiff must bear to avoid dismissal. *Id.* Where, as here, the court considers only the parties' written submissions, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists." *Id.* If, on the other hand, the court permits discovery or holds an evidentiary hearing, then the plaintiff must show by a preponderance of evidence that jurisdiction exists. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

Regardless of the method employed to rule on a motion to dismiss under Rule 12(b)(2), the plaintiff cannot "rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise[,] . . . specific facts showing the court has jurisdiction." *Id.* (quotation omitted). When ruling on a motion to dismiss without conducting an evidentiary hearing, courts must consider the pleadings and affidavits in the light most favorable to the nonmoving party. *Beydoun*, 768 F.3d at 504. Nevertheless, courts may accept as true uncontroverted factual assertions of the defendant, provided they are "consistent with the representations of the plaintiff." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997). In other words, a "plaintiff may not simply rest on the bare allegations of the complaint. But uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); *see also Opportunity Fund, LLC v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 538 (S.D. Ohio 2012) (Marbley, J.) ("In deciding a Rule 12(b)(2) motion, the Court construe[s] the facts in the light most favorable to the non-moving party and **does not weigh** the controverting assertions of the party seeking dismissal." (quotation omitted)).

### III. ANALYSIS

HomeAdvisor moved to dismiss by challenging this Court's personal jurisdiction. Where, as here, "a federal court's subject matter jurisdiction over a case stems from the existence of a federal question"—i.e., whether HomeAdvisor violated the TCPA—"personal jurisdiction exists if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quotation omitted).

5

Ohio's long-arm statute does not extend to the full limits of the Due Process Clause. *Id.* Nevertheless, because HomeAdvisor mentions Ohio's long-arm statute only in passing, while focusing instead on the lack of due process (Doc. 18 at PageID 61-65), the Court limits its analysis to the Due Process Clause as well. *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (addressing due process concerns rather than inquiring into propriety of jurisdiction under Ohio's long-arm statute). The Sixth Circuit repeatedly has emphasized that the central question in determining whether personal jurisdiction is proper under the Due Process Clause is "whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice.'" *Bird*, 289 F.3d at 871 (quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)).

Personal jurisdiction comes in two flavors: general jurisdiction and specific jurisdiction. General jurisdiction, or "all-purpose jurisdiction," exists when a defendant's contacts with a state "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Specific jurisdiction, or "case-linked jurisdiction," on the other hand, "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quotation omitted). Specific jurisdiction remains confined "to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* In this case, Johansen does not contend that HomeAdvisor is subject to general jurisdiction in Ohio. (Pl.'s Resp. in Opp'n, Doc. 25, PageID 97 ("Plaintiff makes no claim HomeAdvisor is subject to general jurisdiction in Ohio.")). The Court, therefore, turns its attention to whether specific jurisdiction exists over HomeAdvisor.

The Sixth Circuit has established a three-part test for determining whether a defendant's contacts with the forum state suffice to assert specific personal jurisdiction over that defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. **Second, the cause of action must arise from the defendant's activities there.** Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird*, 289 F.3d at 874 (quotation omitted) (emphasis added).

The parties spar over the second requirement from this test and, more specifically, whether HomeAdvisor should be forced into court in Ohio based on the conduct of another party. In short, this controversy hinges on principles of vicarious liability and the relationships between HomeAdvisor, One Planet, and Lead House.

### A.  Under the TCPA, Courts May Assert Personal Jurisdiction Over Sellers Based on a Theory of Vicarious Liability and the Forum-State Contacts of Third-Party Telemarketers.

Johansen argues that "personal jurisdiction may be exercised over [HomeAdvisor] based on its agent's contacts with the forum state." (Doc. 25 at PageID 92). To be sure, both the Federal Communications Commission (which implements the TCPA) and federal courts (which interpret it) recognize vicarious liability under the TCPA under "federal common law principles of agency." *In re Jt. Pet. Filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6754 (2013) ("[A] seller . . . may be held vicariously liable under federal common law principles of agency for violations of [the TCPA] that are committed by third-party telemarketers."); *Imhoff Invest., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015) ("The *DISH Network* decision further found that the seller may be *vicariously* liable for such violations under federal common law agency principles."); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015) (recognizing and exploring vicarious liability under the TCPA).

7

Any other interpretation of the TCPA "would allow companies to evade TCPA liability simply by creative contracting." *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-cv-6131, 2014 WL 3014874, at *3 (E.D.N.Y. July 3, 2014) (quotation omitted).  As one court explained, Congress enacted the TCPA "to protect individuals from the annoyance and cost" of receiving telemarketing calls to which they did not previously consent.  *Smith v. State Farm. Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 774 (N.D. Ill. 2014).  Sellers, of course, remain "in the best position to monitor and police third-party telemarketers' compliance with the TCPA."  *Id.*  Permitting sellers to avoid liability "by outsourcing their telemarketing activities to unsupervised third parties would leave consumers . . . without an effective remedy . . . particularly when the telemarketers are judgment proof, unidentifiable, or located outside the United States."  *Id.*  Imposing vicarious liability avoids these pitfalls and supports the very purpose of the TCPA.  *Id.*

Because a seller may be *liable* under the TCPA for the actions of its agent, a seller also may be subject to personal jurisdiction in a given forum state based on the actions of its agent.  *See, e.g.*, *Keim v. ADF MidAtlantic, LLC*, No. 12-80577-CIV, 2016 WL 4248224, at *3 (S.D. Fla. Aug. 10, 2016) ("Because Keim alleged that Songwhale and Cellit acted as the Moving Defendants' agents when they sent the text messages at issue, those text messages are attributed to the Moving Defendants as their own acts for the purpose of determining personal jurisdiction."); *Phan v. Grand Bah. Cruise Line, LLC*, No. 15-cv-5019, 2016 WL 1427648, at *2 (N.D. Cal. Apr. 12, 2016) ("[T]he Court recognizes that vicarious liability is a valid theory for relief under the TCPA and for exercising jurisdiction over a defendant that otherwise lacks sufficient contacts with the forum . . . .").  *See generally Suarez Corp. v. CBS, Inc.*, 23 F.3d 408, 1994 WL 142785, at *2-5 (6th Cir. 1994) (unpublished table decision) (recognizing that personal jurisdiction may be imputed from an agent's contacts with the forum state).

To prevent attempts to evade liability, the FCC made clear that vicarious liability under the TCPA does not require a "formal" agency relationship. *Keating*, 615 F. App'x at 371. Instead, defendants may be held vicariously liable for TCPA violations "under a broad range of [federal common-law] agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* (quoting *DISH Network*, 28 F.C.C.R. at 6584); *In re Monitronics Int'l, Inc.*, No. 1:13MD2493, 2015 WL 1964951, at *5 (N.D. W. Va. Apr. 30, 2015) (same) (citing *DISH Network*, 28 F.C.C.R. at ¶ 28).

The question, then, is whether the Court may assert personal jurisdiction over HomeAdvisor based on an agency relationship with One Planet or Lead House—whether formal or apparent—or, in the alternative, whether HomeAdvisor ratified the conduct of One Planet or Lead House. *See DISH Network*, 28 F.C.C.R. at 6584; *see also Keating*, 615 F. App'x at 371-72; *Monitronics Int'l*, 2015 WL 1964951, at *5.

Johansen does not argue that that jurisdiction is proper based on (1) a formal agency relationship between HomeAdvisor and One Planet and/or Lead House or (2) apparent authority. (Doc. 25 at PageID 99-102). Nor could he; HomeAdvisor's unrefuted supporting declarations show otherwise. (Zurcher Decl., Doc. 18-1, ¶¶ 7-11; Lippincott Decl., Doc. 18-2, ¶¶ 4-6); *see Kerry Steel*, 106 F.3d at 153 (permitting courts to accept as true uncontroverted factual assertions of the defendant). Instead, Johansen relies solely on a ratification theory to show that jurisdiction is proper. (Doc. 25 at PageID 99 ("Plaintiff has sufficiently alleged HomeAdvisor ratified the illegal actions of its agent, One Planet, and its subagents, including Lead House. . . . Accordingly, Plaintiff has set forth a *prima facie* showing that HomeAdvisor is vicariously liable for One Planet and Lead House's conduct and, therefore, that HomeAdvisor is subject to personal jurisdiction in Ohio.")). The Court will focus solely on the ratification issue as well.

9

**B. The Court Lacks Jurisdiction over HomeAdvisor Based on a Ratification Theory.**

Johansen argues that personal jurisdiction is proper based on a ratification theory. In short, he argues that Lead House or One Planet violated the TCPA through Ohio-based telemarketing calls to numbers on the Do Not Call Registry; that HomeAdvisor knowingly benefited from those violations (or, at the very least, turned a blind eye to them); and that, as a result, HomeAdvisor should be subject to suit in Ohio. (*Id.*).

As explained below, there are two problems with Johansen's ratification argument. First, HomeAdvisor submitted two unrefuted declarations showing that Lead House, who made the offending calls, was not acting or purporting to act as HomeAdvisor's agent, as required for ratification. *See* Restatement (Third) of Agency, § 4.03 (2006) ("Acts That May Be Ratified"). Second, HomeAdvisor's declarations show that the company neither knew nor should have known that Lead House violated the TCPA when HomeAdvisor accepted Johansen's sales lead, as also required for ratification. *Id.* § 4.06 ("Knowledge Requisite to Ratification"). Both problems prove fatal to Johansen's ratification theory and to his assertion that personal jurisdiction over HomeAdvisor is proper.

<u>1. Ratification Requires a Principal-Agent Relationship, Whether Real or Purported, and HomeAdvisor's Unrefuted Declarations Show that Such a Relationship Was Lacking.</u>

Johansen's ratification theory fails at the outset because HomeAdvisor submitted a pair of unrefuted declarations showing that Lead House, who made the offending calls, was not acting or purporting to act as HomeAdvisor's agent when making the calls, as required for HomeAdvisor to ratify them. In the absence of a real or purported principal-agent relationship, HomeAdvisor could not have ratified Lead House's conduct, nor can it be forced into federal court in Ohio based on Lead House's contacts with the forum state.

In TCPA cases, the Sixth Circuit looks to the Restatement of Agency to determine whether vicarious liability should be imposed. *Keating*, 615 F. App'x at 371 (adopting FCC's opinion in *DISH Network*, which looked, in turn, to "a broad range of [federal common-law] agency principles" for imposing vicarious liability); *id.* at 373 (adopting Restatement definitions of "actual" and "apparent authority"). Other jurisdictions similarly look to the Restatement of Agency to determine whether a seller has ratified the conduct of third-party telemarketers. *See, e.g.*, *Kristensen v. Credit Payment Servs., Inc.*, No. 1:12-cv-00528, 2015 WL 4477425, at *3 (D. Nev. July 20, 2015) (adopting Restatement (Third) of Agency on ratification in TCPA case); *Smith*, 30 F. Supp. 3d at 779 (same).

Under the Restatement, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency, § 4.01(1) (2006). A person may ratify an act of another by "manifesting assent that the act shall affect the person's legal relations" or by "conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2). The Restatement imposes a critical restriction on what *type* of acts may be ratified, however. Under the Restatement, a person may ratify an act *only* "if the actor acted or purported to act as an agent on the person's behalf." *Id.* § 4.03. As the commentary explains, "[w]hen an actor is not an agent and does not purport to be one, the agency-law doctrine of ratification is *not* a basis on which another person may become subject to the legal consequences of the actor's conduct." *Id.* § 4.03 cmt. b (emphasis added). This requirement "limits the range of ratifiable acts to those done by an actor who is an agent or who is not an agent but pretends to be." *Id.* § 4.01 cmt. b (citing Restatement (Third) of Agency, § 4.03).

As several courts have explained, "[a]lthough a principal is liable when it ratifies an originally unauthorized tort," such as a TCPA violation, "the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *E.g.*, *Murray v. Choice Energy, LLC*, No. 1:15-cv-60, 2015 WL 4204398, at *6 (S.D. Ohio July 10, 2015) (quotation omitted) (dismissing TCPA claim based on ratification theory for failure to plead principal-agent relationship); *Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274, 2015 WL 3526253, at *10 (C.D. Cal. May 18, 2015) (granting summary judgment on TCPA claim based on ratification for failure to present evidence that would support an applicable principal-agent relationship). Without this "prerequisite" principal-agent relationship, a defendant cannot "ratify" the actions of third parties. *Makaron*, 2015 WL 3526253, at *10.

Johansen's attempt to show that personal jurisdiction is proper fails because HomeAdvisor's unrefuted declarations show there was no principal-agent relationship with Lead House—whether real or pretend. For example, Matt Zurcher, Senior Vice President for Customer Care, declared that "HomeAdvisor has no agreements, arrangements[,] or contracts with Lead House, nor has any such relationship existed between the two companies." (Zurcher Decl., Doc. 18-1, ¶ 7). In fact, "HomeAdvisor has not directly communicated with or contacted Lead House at any time" and was not even aware of Lead House "prior to receiving notice of the Complaint." (*Id.*). These facts, which Johansen has not countered, bear no resemblance to the "classic definition of common-law agency," which the Sixth Circuit has described as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act." *See Keating*, 615 F. App'x at 372 (quoting Restatement (Third) of Agency § 1.01).

If HomeAdvisor was not even aware of Lead House's existence when it purchased Johansen's sales lead from One Planet, then Lead House could not have been acting as HomeAdvisor's agent when it made the offending calls, and there was no "originally unauthorized tort" for HomeAdvisor to "ratify."  *See Murray*, 2015 WL 4204398, at *6; *Makaron*, 2015 WL 3526253, at *10.  Johansen failed to submit a declaration or other supporting documentation in response to HomeAdvisor's properly supported motion to dismiss, and none of HomeAdvisor's factual assertions is at odds with the relevant allegations from Johansen's complaint.  Accordingly, the Court may accept as true HomeAdvisor's uncontroverted assertions in finding that Johansen failed to make a *prima facie* showing that personal jurisdiction exists by way of ratification.  *See Kerry Steel*, 106 F.3d at 153.

   2.  Even if There *Were* a Principal-Agent Relationship, Johansen Has not Shown that HomeAdvisor Knew or Should Have Known that Lead House Was Violating the TCPA.

As explained, the Court lacks jurisdiction over HomeAdvisor based on Johansen's ratification theory because he failed to show the prerequisite principal-agent relationship between HomeAdvisor and Lead House—the entity that actually made the calls.  Putting *that* shortcoming aside, Johansen's jurisdiction-through-ratification theory fails for a second reason: he has not shown that HomeAdvisor knew or should have known that Lead House was violating the TCPA when HomeAdvisor purchased Johansen's sales lead from One Planet.

To be liable (and hence, subject to personal jurisdiction) for TCPA violations under a ratification theory, "the principal must either (1) have actual knowledge of all material facts about the agent's act or (2) should have known of the actual facts because a reasonable person under the circumstances would have 'investigate[d] further.'"  *Kristensen*, 2015 WL 4477425, at *3 (quoting Restatement (Third) of Agency § 4.01 cmt. b); *see also Smith*, 30 F. Supp. 3d at 779 (same); *Murray*, 2015 WL 4204398, at *6 (citing Restatement (Third) of Agency § 4.06).

Here, as in *Kristensen*, Johansen has "no evidence" that HomeAdvisor "actually knew" material facts about Lead House's telemarketing activity. *Kristensen*, 2015 WL 4477425, at *3. To the contrary, HomeAdvisor's unrefuted declarations show that "HomeAdvisor was not aware of Lead House or of any relationship between One Planet and Lead House prior to receiving notice of the Complaint filed in this lawsuit." (Zurcher Decl., Doc. 18-1, at ¶ 7). Where, as here, a seller "has no information of telephone calls being placed by . . . [a purported agent]," the seller "could not have ratified those calls." *Makaron*, 2015 WL 3526253, at *10 (granting summary judgment to defendant on TCPA claim).

In the absence of actual knowledge, all that remains is "the theory that [HomeAdvisor] 'should have known' of the material facts." *See Kristensen*, 2015 WL 4477425, at *3. The Restatement makes clear, however, "that a principal must be alerted to some sort of red flag or suspicious fact before it will be charged with constructive knowledge of an agent's acts." *Id.*; *see* Restatement (Third) of Agency, § 4.06 cmt. d ("A factfinder may conclude that a principal has made such a choice [to ratify] when the principal is shown to have had knowledge of facts that would lead a reasonable person to investigate further, but the principal ratified without further investigation.").

Here, the only "red flag" that Johansen can point to is the fact that he purportedly "alerted HomeAdvisor that its agent and subagents were engaging in illegal telemarketing practices" by "previously su[ing] HomeAdvisor *twice* for calls made by the third parties that engage in telemarketing on its behalf." (Doc. 25 at PageID 100-01 (citing Doc. 1 at ¶¶ 34-35)). Johansen does not, however, allege *where* he filed those lawsuits, *which* third-party telemarketers were at issue in those cases, or *what* remedial steps, if any, HomeAdvisor took (or failed to take) as a result of his legal actions.

Even considering Johansen's "red flag" allegations in the light most favorable to him, as this Court must on a motion to dismiss, HomeAdvisor submitted unrefuted supporting declarations showing that a reasonable seller would not have investigated further. Mr. Zurcher's declaration reveals that One Planet—the only third party that HomeAdvisor was aware of— represented in its contract with HomeAdvisor "that [One Planet's] actions will be in full compliance with applicable federal, state, local and other laws, including all applicable Do Not Call laws and regulations, and that it has obtained consent as required by law to provide HomeAdvisor with a Service Request." (Zurcher Decl., Doc. 18-1, at ¶ 10). Thus, HomeAdvisor took reasonable steps to ensure that the leads it purchased were not tainted by illegal telemarketing activity. At least one court has found that where, as here, the seller formed a contract with a third-party that "specifically noted that [the third party] had to comply with all state and federal laws," including all Do Not Call provisions, the plaintiff "fail[s] to allege a plausible basis to hold [the seller] liable under a ratification theory." *Jones v. All Am. Auto Prot., Inc.*, No. 3:14-CV-00199, 2015 WL 7566685, at *5 (D. Nev. Nov. 24, 2015) (granting summary judgment on TCPA claim) (noting that the seller "also made efforts to enforce compliance").

At bottom, and as the FCC concluded in its declaratory ruling in *DISH Network*, "we do not think that an action taken for the benefit of a seller by a third-party retailer, *without more*, is sufficient to trigger the liability of a seller under [the Do Not Call provision of the TCPA]." *DISH Network*, 28 F.C.C.R. at 6593 (emphasis added). But that is all Johansen has alleged. Under these circumstances, the Court cannot assert personal jurisdiction over HomeAdvisor based on Lead House's contacts with the forum state. *See Phan*, 2016 WL 142748, at *2 (dismissing TCPA claim for lack of personal jurisdiction where plaintiffs "failed to controvert the declarations the [moving] Defendants submitted to show a lack of agency.").

15

## IV.  CONCLUSION

For these reasons, the Court **GRANTS** HomeAdvisor's Motion to Dismiss for lack of personal jurisdiction (Doc. 18).

**IT IS SO ORDERED.**

                                                                 **s/ Algenon L. Marbley**
                                                                 **ALGENON L. MARBLEY**
                                                                 **UNITED STATES DISTRICT JUDGE**

**DATED:  October 31, 2016**