IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KEN JOHANSEN, | Case No. 2:16-cv-00121 |
| Plaintiff, | Judge Marbley |
| vs. | Magistrate Judge Deavers |
| ONE PLANET OPS, Inc. | |
| Defendants. | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Ken Johansen moves this Court to certify a Plaintiff Class against Defendant One Planet Ops, Inc. pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). The Plaintiff Class that Mr. Johansen seeks to represent is defined as follows:

> All persons within the United States whose phone numbers were registered on the Do Not Call Registry, and who, within the four years before the filing of the initial Complaint, through the date of class certification, received more than one telemarketing call within any twelve-month period from or on behalf of One Planet. This described class to be further limited to those persons whose phone numbers were included in the records produced by Lead House and whose numbers were identified in the expert report of Ms. Verkovshkaya as a number that was listed on the Registry at the time of the calls at issue.

The facts and law supporting certification are set forth in the Complaint, the attached memorandum in support and exhibits thereto.

KEN JOHANSEN,

By:/s/ *Brian K. Murphy*
Brian K. Murphy (0070654)
Joseph F. Murray (0063373)
Geoffrey J. Moul (0070663)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401
E-mail: murphy@mmmb.com
         murray@mmmb.com
         moul@mmmb.com

Edward A. Broderick (*pro hac vice*)
Anthony I. Paronich (*pro hac vice*)
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (508) 221-1510
Facsimile: (617) 830-0327
E-mail: ted@broderick-law.com
 anthony@broderick-law.com

Matthew P. McCue (*pro hac vice*)
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077
E-mail: mmccue@massattorneys.net

**MEMORANDUM IN SUPPORT**

### I.    INTRODUCTION

The national Do Not Call Registry is one of the most popular government programs ever created. The Registry was established in 2003 to provide a safe haven from unwanted telemarketing calls. It has more than 226 million active registrations, including that of the Plaintiff, Ken Johansen, who registered his residential number on the Registry back in 2003. https://www.ftc.gov/news-events/press-releases/2016/12/ftc-issues-fy-2016-national-do-not-call-registry-data-book (last visited June 5, 2017). As detailed below, the defendant in this class action, One Planet Ops ("One Planet") was responsible for making 49,783 telemarketing calls to 9,407 residential phone numbers listed on the Registry, via its telemarketing agent The Lead House, LLC ("Lead House"). That TCPA cases are ideal for resolution via class action is undisputed. As one federal appeals court recently observed, "[c]lass certification is normal [in TCPA cases] . . . because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). That observation holds true here as well, as there are only three main questions for the Court, all of which yield common answers applicable to all class members: did Lead House call DNC registrants, did those calls violate the TCPA, and is One Planet is vicariously liable for Lead House's misconduct?

### II.    APPLICABLE LAW: TCPA AND DNC PROTECTIONS AND REMEDIES

Congress enacted the TCPA more than twenty years ago to regulate the explosive growth of telemarketing, which it recognized as a nuisance and an intrusive invasion of privacy. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Among other things, the TCPA and its accompanying regulations prohibit sellers from making telephone solicitations to people who have listed their telephone numbers on the national Do Not Call Registry. A telemarketer is prohibited from calling a DNC registrant unless that registrant consents to receive the calls in a

1

signed, written agreement. 47 C.F.R.§ 64.1200(c)(2)(ii). To avoid calling a number listed on the Registry, a telemarketer can easily and inexpensively "scrub" its call lists against the Registry database at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv). It is well-established that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls. "A person who has received more than one telephone call within any 12 month period *by or on behalf of* the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C.§ 227(c)(5) (emphasis added). As part of the continuing effort to prevent the type of wide-scale violation at issue in this case—where profitable businesses hire others in an effort to hide their role in telemarketing campaigns—the FCC has ruled that companies may be held vicariously liable for calls made on their behalf, in a wide variety of situations, including when the companies knowingly benefit from the calls. *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6588 (2013) ("FCC Vicarious Liability Order"). As the FCC explained:

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.

*Id*; *see also id*. at 6593 ("we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its

authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised")

### III.  RELEVANT FACTS

One Planet is an on-line marketing entity that, relevant here, contracted to provide "leads" to its client Home Advisor, a corporation that, in turn, sold referrals to contractors in the home improvement industry.  See Exhibit 1, Deposition of Rudd Lippincott, Vice President, Marketplace, One Planet 30(b)(6) designee, at pg. 9, lines 16-23.  One Planet obtained the leads that it sold to Home Advisors from a telemarketer called Lead House. Id. at page 14, line 15-28. On May 7, 2015, One Planet and Lead House entered into a contract (the "Contract") pursuant to which One Planet authorized Lead House to solicit leads on its behalf purportedly from consumers who filled out an on-line form explicitly providing their prior express consent to receive telemarketing calls from One Planet.  See Exhibit 2,[1] Contract at ¶2(j).  Pursuant to this arrangement, Lead House was to first obtain the consumer's prior express consent to receive telemarketing calls via an on-line form. Id.  To ensure that the leads were legitimate, One Planet required Lead House to obtain and preserve the IP Address used by the consumer who purportedly filled out an on-line form explicitly consenting to receive telemarketing calls from One Planet. Id. at ¶2(i).  The Contract also required Lead House to obtain and preserve the "source URL" of the web-site address where the on-line form was purportedly filled out. Id.  The Contract limited the web-sites that Lead House could be used to obtain prior express consent from consumers to receive telemarketing calls from One Planet to the web site owned by Lead House (www.theleadhouse.com). Id. at ¶1(d). The Contract gave One Planet broad power to supervise and enforce its terms.  Specifically, Section 2(e) of the Contract provided One Planet with the

---

[1] The Contract refers to One Planet as "Reply," the name that One Planet used at the time it entered into the Contract.  There is no dispute that the two are one and the same.

3

power to determine whether or not the leads generated by the Lead House, or the contact information provided with such lead, were in fact fraudulent.  *See* Contract at ¶2(e). The Contract also provided One Planet with broad powers of enforcement.  If Lead House failed to comply with the Contract, One Planet had the power to "suspend" the Lead House account, to immediately terminate the account, to withhold payment, and with all other remedies available under law.  *See* Contract at ¶3(a)-(d).

Although One Planet had broad authority to supervise Lead House to take action against Lead House if it determined that leads obtained by Lead House were fraudulent or not compliant with the Contract, it simply chose not to.  One Planet testified that it relied entirely on Lead House to comply with all applicable telemarketing laws, and relied upon Lead House to ensure that consumers being called on behalf of One Planet, who were listed on the Registry, first provided Lead House with their prior express consent signed in writing.  *See* Exhibit 1, Deposition of Rudd Lippincott, Vice President, Marketplace, One Planet 30(b)(6) designee, at pg. 15, lines 8-23 (One Planet only reviewed leads it obtained via Lead House via an automated process that confirmed name, physical address and phone number), pg. 16, lines 2-25 and pg. 17, lines 1-7 (One Planet did not require Lead House to produce to it the IP Address and did not require Lead House to produce to it the exact consent language agreed to by the consumer); pg. 44, lines 14-16 (Lead House was entirely in charge of TCPA compliance); pg. 62, lines 1-14 (admitting that One Planet would sell leads obtained from Lead House without knowing whether the lead came from and that to do so would not be feasible given the volume of leads that came across the One Planet lead platform every day).

Even though Lead House was contractually obligated to obtain and preserve the consumer's IP Address, the URL identifying the web-site purportedly visited by the consumer,

4

and the exact consent language purportedly agreed to by the consumer, the leads provided to One Planet by Lead House only provided the name, address and phone number of consumers. (Lippincott Dep. at pg. 62, lines 1-14.) One Planet did not require Lead House to provide it with any other information (IP Address, URL, or consent language) that could confirm whether or not the consumer, in fact, had consented to receive telemarketing calls from One Planet and its customers. *Id.* Although it had the contractual power to do so, One Planet did nothing to check or confirm that Lead House's assurances that it was obtaining valid consent from consumers was true or in compliance with the terms of the Contract.

It turns out, of course, that Lead House did not obtain the prior express consent signed and in writing of consumers on the Registry. Mr. Johansen, for example, despite being listed on the Registry received multiple telemarketing calls from Lead House, calling on behalf of One Planet, seeking to confirm that the information Mr. Johansen purportedly provided on his "on-line form" was accurate. *See* Exhibit 3, Deposition of Ken Johansen at 116:13-18. These calls were made to and received by Mr. Johansen on December 11, 2015, December 12, 2015 and December 17, 2015. *Id.* at 95:1-15. There is no dispute that these calls were made by Lead House. *See* Exhibit 4, e-mail string between Lead House and One Planet at OP_000033 (Lead House admits it called Ken Johansen "thrice in the last 6 months."). On the December 17, 2015 call, Mr. Johansen spoke at length with the marketer who claimed they were calling on behalf of "National Home Improvement." *See* Exhibit 3, Johansen Deposition at 113:13-18. This was a misrepresentation. The call was made by Lead House seeking to confirm information on a lead that it was selling to One Planet. *See* Exhibit 4. Thereafter, Mr. Johansen complained to Home Advisor who, in turn, confirmed that Mr. Johansen had been called via One Planet, who contacted Mr. Johansen. Exhibit 3, Johansen Deposition at 155:14—157:4. One Planet then asked Lead House to explain

why Mr. Johansen was called on three occasions despite having his number listed on the Registry. In response, Lead House claimed that Mr. Johansen submitted an on-line form via www.freehomeimprovementquotes.com.[2] *See* Exhibit 4, e-mail string between Lead House and One Planet at OP_000088 (Lead House claims source of Johansen lead was www.freehomeimprovementquotes.com).  Of course, this was ***not*** a web-site approved by One Planet as a source of valid leads. *See* Exhibit 2, Contract at ¶1(d). The Contract limited Lead House to generating leads only from www.leadhouse.com.  Had One Planet done even the most basic due diligence it would have learned that Lead House was generating leads from suspect, unapproved, web-sites.  Further, even though the Contract required Lead House to obtain the IP Address of the consumer purportedly filling out the on-line form consenting to receive telemarketing calls from One Planet, Lead House never provided One Planet with Ken Johansen's IP Address.  Again, if One Planet had done even the most basic due diligence, it would have learned that Lead House was not generating reliable consent leads in accord with the terms of the Contract.

---

[2] In response, One Planet asked Lead House to produce the lead form and the IP Address used to fill out the form.  Lead House failed to respond to either request.  Instead, after if first told One Planet that Mr. Johansen had consented via an on-line form, it then changed its story to claim that Mr. Johansen must have consented "off line." *See* Exhibit 5, e-mail string between Lead House and One Planet at OP_0000145 (Lead House claims that Mr. Johansen's consent was obtained "through an offline event" and that Lead House did not have "any IP address for this lead.").  Finally, in response to a Request for Production of Documents as to all documents evidencing Mr. Johansen's consent to receive the telemarketing calls at issue, One Planet ***admitted*** that no such documents exist.  *See* Exhibit 6, One Planet Response to Ken Johansen's Request for Admissions at Request 9 (admitting that One Planet has not located documents evidencing Mr. Johansen's written consent to receive telemarketing calls from One Planet).  To date, One Planet has failed to produce any evidence that any other class member consented to receive telemarketing calls from Lead House on behalf of One Planet.  *Id.* One Planet Document Response Request No. 11 (In response to a document request seeking all evidence in support of its affirmative defense of consent One Planet produces only the Contract and nothing else).

6

Mr. Johansen's circumstance is only the tip of the iceberg. In response to a subpoena, Lead House produced logs of outbound calls made to generate leads for One Planet. *See* Exhibit 7, Declaration of Ankush Singh at ¶8(c) (identifying call records produced in response to subpoena). Mr. Johansen's telemarketing expert, Anya Verkhovskaya, analyzed the calling records produced by Lead House and compared them to a list of phone numbers listed at the time of the calls on the Registry. Ms. Verkovshkaya confirmed that Lead House, calling on behalf of One Planet, made 49,783 illegal telemarketing calls to 9,407 consumers whose numbers were listed at the time on the Registry. *See* Exhibit 8, Expert Report of Anya Verkovshkaya. To date, neither Lead House nor One Planet has come forth with evidence to satisfy Defendant's burden of establishing that class members provided their prior express consent signed in writing to receive telemarketing calls from or on behalf of One Planet.

### IV.   CLASS DEFINED

The class that Mr. Johansen seeks to represent to be defined as:

> All persons within the United States whose phone numbers were registered on the Do Not Call Registry, and who, within the four years before the filing of the initial Complaint, through the date of class certification, received more than one telemarketing call within any twelve-month period from or on behalf of One Planet. This described class to be further limited to those persons whose phone numbers were included in the records produced by Lead House and whose numbers were identified in the expert report of Ms. Verkovshkaya as a number that was listed on the Registry at the time of the calls at issue.

### V.   CLASS CERTIFICATION STANDARD

Class certification is proper if a plaintiff satisfies the requirements of Rule 23(a) and one of the prongs of Rule 23(b). The purpose of Rule 23 is to provide for the efficient administration of justice, as the class action mechanism allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there would be none. "Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v.*

7

*Bernard*, 452 U.S. 89, 99 (1981); Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010).

Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and, (iv) that both the named-representative and his counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a); *see Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-14, 117 S. Ct. 2231 (1997).

In 2014, the Sixth Circuit Court of Appeals affirmed an order granting class certification in a TCPA case confirming the legitimacy of Rule 23's application to TCPA claims. *See Am. Copper & Brass, Inc. v. Lake City Indus. Prods.*, 757 F.3d 540 (6th Cir. Mich. 2014). As another federal appellate Court has held, "[c]lass certification is normal in litigation under [the TCPA]." *Ira Holtzman, C.P.A. & Assoc. Ltd.. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *see also Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities, Inc.*, No. 09-c-07299, 2014 WL 540250, at *15, n. 11 (N.D. Ill. 2014) ("*Chapman I*"), *leave to appeal denied* 747 F.3d 489 (7th Cir. 2014) ("*Chapman II*") (Posner, J.) (discussing "the many cases decided during and since 2011 in which TCPA classes have been certified, as well as the Seventh Circuit's observation in *Turza* that class certification is the norm in TCPA cases"). These holdings are consistent with the Supreme Court's observation that the class certification requirements are "readily met" in consumer protection cases where, as here, common factual questions necessarily center upon the defendant's course of conduct. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

8

## VI. ARGUMENT

### A. All Rule 23(a) requirements are met.

#### 1. Rule 23(a)(1) 49,783 calls to 9,407 class members easily satisfies numerosity.

Numerosity under Rule 23(a)(1) requires proof that the putative class "is so numerous that joinder of all members is impracticable." "When class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Here, Ms. Verkovshkaya's report makes clear that there are 9,407 class members. Because it would be impracticable to join all of the proposed class members, numerosity is satisfied.

#### 2. Rule 23(a)(2) —The answers to the dispositive questions raised here uniformly apply to all class members.

Rule 23(a)(2) next requires that there is "a common question of law or fact among the members of the class." While both common questions of law and common questions of fact exist as to the classes, both need not be shown to satisfy the rule. To meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention … of such a nature that it is capable of class wide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Here, the common questions are dispositive, apply equally to all class members, and can be resolved using common proof and uniform legal analysis. They include:

- Did the telemarketing calls placed to class members by Lead House pursuant to the Contract with Lead House, violate the TCPA?

9

- Is One Planet vicariously liable for the telemarketing calls placed on its behalf by Lead House during the class period?

- Can Lead House or One Planet meet its affirmative burden of demonstrating that any class member provided their prior express consent signed in writing to receive the telemarketing calls at issue?

- Should class members recover statutory damages of up to $500 per violation of § 227(b)(3)(B)? These damages are set by statute, and require no individualized analysis of harm.

- Should those damages constitute "willful" or "knowing" violations of the TCPA, and thereby entitle all class members to treble damages under the TCPA?

These legal and factual questions are shared by all class members. Further, the uniformity of the applicable law—the federal TCPA—makes resolution of these questions on a class-wide basis viable. Whether or not One Planet is vicariously liable for the actions of Lead House is a legal question that can be resolved on behalf of the entire class via common proof. *See e.g. Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* 2014 U.S. Dist. LEXIS 166275 *13 (N.D. Ohio Dec. 1, 2014) (certifying a TCPA case finding, "the case involves common legal questions regarding Defendants' liability under the TCPA"). As there are many common issues of fact and law among all class members, Rule 23's commonality pre-requisite is satisfied.

### 3. Rule 23(a)(3) —Typicality is satisfied as Mr. Johansen and all class members received identical telemarketing calls from Lead House promoting One Planet.

Generally, typicality is satisfied where the claims are based on the same legal remedial theory. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). Substantial identity between the operative facts of the representative plaintiff and the class in general is not necessary. *Rutherford v. Cleveland*, 133 F.3d 905 (6th Cir. 1998). If the representatives' claims arise from the same course of general conduct challenged on behalf of the class, and the

10

representatives assert the same theories of relief, plaintiffs will, in proving their individual case, therefore also prove the case for absent class members. *Id.*  Thus, typicality is then satisfied. *Mick v. Level Propane Gases Inc.,* 1999 WL 33453772, *16-17 (S.D.Ohio 1999).

      Mr. Johansen and all class members received multiple telemarketing calls from Lead House who was calling on behalf of One Planet, during a period of time when their phone number was listed on the Registry.  Like all other class members, Mr. Johansen received multiple telemarketing calls from Lead House on behalf of One Planet on a phone number listed on the Registry.  Like all other class members, Mr. Johansen did not provide his prior express consent signed and in writing to receive such calls.  Like all other class members, Mr. Johansen seeks statutory damages as a remedy, obviating the need for this Court to conduct any assessment of individual damages.  All putative class members' claims flow from the same conduct that produced the calls at issue, and as such, typicality is satisfied. As this Court has stated, "the claims of the named plaintiffs and the absent members must be typical, not identical or homogeneous." *Gascho v. Global Fitness Holdings, LLC*, 2014 U.S. Dist. LEXIS 96695 (S.D. Ohio July 16, 2014) (Smith, J.) *quoting Prater v. Ohio Educ. Ass'n*, 2008 U.S. Dist. LEXIS 88511, *9 (S.D. Ohio June 26, 2008) (Sargus, J.); s*ee also Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* 2014 U.S. Dist. LEXIS 166275 *13 (N.D. Ohio Dec. 1, 2014) (certifying a TCPA case finding, "The 'typicality' requirement is met as the legal theory for each class member is based on the same facts and legal theory as [plaintiff]").  For all of these reasons, the typicality pre-requisite of Rule 23 is satisfied.

11

### 4. Rule 23(a)(4) —Mr. Johansen and his counsel have demonstrated the commitment and competency needed to prosecute the class claims.

Rule 23(a)(4) requires that the class representative can fairly and adequately protect and represent the interests of each member of the class. Class representatives are adequate if their interests are not antagonistic to members of the class. *Rutherford v. Cleveland*, 133 F.3d 905 (6th Cir. 1998). If the representative parties share the class interest in resolving the common issues, certification is appropriate. *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667 (N.D. Ohio 1995).

Mr. Johansen has no conflicting interests with class members. In fact, by investigating, filing, and vigorously prosecuting this case, he has demonstrated a desire and ability to protect class members' interests. He has elected not to pursue solely his individual claims in this matter, but instead is standing up for others who, like him, have been subjected to unlawful telemarketing that benefits One Planet.

Just as Mr. Johansen is committed to the prosecution of this case, so too are his lawyers, who request appointment as class counsel. As stated in the declarations attached as Exhibits 9-12, Plaintiff's counsel collectively have more than fifty years of experience litigating TCPA class actions in federal courts across the nation and have and will continue to zealously advocate for the interests of all class members.

## B. All Rule 23(b) requirements are met.

### 1. The common issues—whether the calls were made in violation of the TCPA and whether One Planet is vicariously liable for the telemarketing conduct—predominate over individual questions.

Predominance is "readily met" in certain consumer cases. *Amchem*, 521 U.S. at 625. In addition, as the Supreme Court has held, while Rule 23(b)(3) requires a showing that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class. *Amgen*, 133 S. Ct. at 1191. "[T]he office of a Rule

12

23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id.*  Whether or not this case is ultimately decided in favor of the class, its resolution will be determined by answering questions common to all class members.

Rule 23(b)(3)'s predominance resembles Rule 23(a)(3)'s typicality requirement. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004). "The commonality requirement is satisfied if there is a single factual or legal question common to the entire class. The predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). The "heart of the litigation" at issue is whether One Planet is vicariously liable for telemarketing calls placed by its authorized telemarketer, Lead House. Vicarious liability attaches "under a broad range of agency principles" in the TCPA context, which will be the focus of trial in this matter. *In re Pet. Filed by DISH Network,* 28 FCC Rcd. 6574, ¶ 28 (2013); *Keating v. Peterson's Nelnet, LLC,* 615 F. App'x 365 (6th Cir. July 21, 2015).  Under the FCC analysis, relevant considerations for vicarious liability include whether Lead House was authorized to market for One Planet; whether One Planet knew or reasonably should have known that Lead House was violating the TCPA, but failed to take effective action to end the violations; whether Lead House was authorized to use One Planet's proprietary systems in facilitating its marketing efforts; and whether Lead House was authorized to use One Plane's trade name or trademark when soliciting business for One Planet. *Id.* at ¶ 46. None of this requires individualized proof, but instead rests on proof of the conduct, interactions, and contractual relationship between One Planet and Lead House.

**2. A class action is the most manageable, efficient and superior mechanism for resolving class members' claims.**

The second prong of the analysis under Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context:

> This type of case weighs in favor of the class action as a superior device. Under the TCPA, the maximum recovery for each class member is $1,500, and it does not allow for fee shifting. Hence, individual class members are unlikely to litigate TCPA claims. Second, in finding federal courts have concurrent jurisdiction with state courts over TCPA actions, the Supreme Court effectively found that Congress did not intend state small claims courts to be the sole forum for TCPA claims. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 751, 181 L. Ed. 2d 881 (2012).

*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* 2014 U.S. Dist. LEXIS 166275, 14-15 (N.D. Ohio Dec. 1, 2014).As one federal court recently found while certifying a TCPA case:

> Jurists and commentators have long debated the merits of the modern class action and the public policies behind Rule 23…It is the view of this Court that the instant case highlights one of the strongest justifications for the class action device: its regulatory function…A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute.

*Bee, Denning, Inc. v. Capital Alliance Group*, 2015 U.S. Dist. LEXIS 129495, 37-38 (S.D. Cal. Sept. 24, 2015).

The proposed class action seeks to resolve the claims of 9,407 consumers in one case. These consumers seek the exact same statutory damages based on liability evidence common across the class. The class is represented by counsel experienced in handling TCPA class actions who have been approved as adequate class counsel on many occasions. Under these facts, the

14

superiority prong of Rule 23(b)(3) is easily satisfied.

## VII. CONCLUSION

As all of elements of Rule 23 are satisfied, this case should be certified and allowed to proceed as a class action.

          KEN JOHANSEN,

          By:*/s/ Brian K. Murphy*
          Brian K. Murphy (0070654)
          Joseph F. Murray (0063373)
          Geoffrey J. Moul (0070663)
          Murray Murphy Moul + Basil LLP
          1114 Dublin Road
          Columbus, OH  43215
          Telephone: (614) 488-0400
          Facsimile: (614) 488-0401
          E-mail: murphy@mmmb.com
                  murray@mmmb.com
                  moul@mmmb.com

          Edward A. Broderick (*pro hac vice*)
          Anthony I. Paronich (*pro hac vice*)
          Broderick & Paronich, P.C.
          99 High St., Suite 304
          Boston, MA 02110
          Telephone: (508) 221-1510
          Facsimile: (617) 830-0327
          E-mail: ted@broderick-law.com
                  anthony@broderick-law.com

          Matthew P. McCue (*pro hac vice*)
          The Law Office of Matthew P. McCue
          1 South Avenue, Suite 3
          Natick, Massachusetts 01760
          Telephone: (508) 655-1415
          Facsimile: (508) 319-3077
          E-mail: mmccue@massattorneys.net

Certificate of Service

    I hereby certify that on June 5, 2017 I have caused the foregoing to be filed with the Court's ECF system which will make service upon all counsel of record.

                                            */s/ Brian K. Murphy*
                                            Brian K. Murphy