**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEN JOHANSEN, on behalf of himself and others similarly situated, | : : | Case No. 2:16-cv-00121 |
| | : | Judge Marbley |
| Plaintiff, | : | |
| | : | Magistrate Judge Deavers |
| v. | : | |
| | : | |
| ONE PLANET OPS INC., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

**I. INTRODUCTION**

Plaintiff, Ken Johansen ("Plaintiff" or "the Class Representative"), along with the

Defendant, One Planet Ops Inc. ("One Planet" or "Defendant") (Plaintiff and One Planet are

collectively referred to as the "Parties"), reached a class action settlement of this matter (the

"Settlement") for which the Court granted preliminary approval on October 11, 2019.[1] (Doc. 94.)

As instructed by the Court's Preliminary Approval Order, A.B. Data as Settlement Administrator

sent the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), to the

appropriate Federal and State officials, mailed the approved form of notice to potential members

of the class, created a case specific website, and processed claims and two requests for exclusion

from the class. (*See* Declaration of Eric Schachter, attached as Exhibit 2.) Class Counsel

additionally filed Plaintiff's Motion for Award of Attorneys' Fees, Expenses, and Class

Representative Award on November 8, 2019. (Doc. 95.) Notably, no objections were received

to any aspect of the Settlement, including Plaintiff's Motion for Award of Attorneys' Fees,

---

[1] Defendant does not oppose this Motion insofar as it supports the proposed settlement.
Defendant does not concede or admit Plaintiff's assertions.

Expenses, and Class Representative Award, and only two requests for exclusion was received. (Declaration of Brian K. Murphy, attached as Exhibit 3, ¶ 10.)

The Settlement was reached by counsel with a keen understanding of the merits of the claim and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  The parties negotiated the Settlement with the assistance of a highly skilled and experienced mediator, which included the exchange of detailed mediation statements.  The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Accordingly, Plaintiff respectfully requests that the Court:  1) grant final approval of the Settlement; 2) certify the proposed Settlement Class; 3) award Class Counsel their attorneys' fees and expenses as requested in Plaintiff's Motion for Award of Attorneys' Fees, Expenses, and Class Representative Award; and 4) award the Class Representative $10,000 for his service to the Settlement Class.  A proposed Final Approval Order is attached as Exhibit 1 and has been lodged with the Court.

## II.     NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the TCPA, which prohibits, *inter alia*, initiating any telephone solicitation to a residential telephone number listed on the Do Not Call Registry. *See* 47 U.S.C. § 227(c).  Plaintiff is an individual residing in Ohio whose telephone number was listed on the Registry and called by an alleged agent of Defendant multiple times.  On February 10, 2016, Plaintiff filed a putative class action complaint against HomeAdvisor, Inc. and One Planet in the United States District Court for the Southern District of Ohio, captioned *Ken Johansen v. HomeAdvisor, Inc.*, No. 2:16-cv-0121, alleging, among other things, that HomeAdvisor, Inc. and One Planet and/or others acting on their behalf made telemarketing calls to telephone numbers listed on the National Do Not Call Registry in violation of the TCPA (the

"Action").  On April 13, 2016, HomeAdvisor moved to dismiss Plaintiff's claims against it.  On

October 31, 2016, the Court dismissed HomeAdvisor from the Action.  On June 5, 2017,

Plaintiff filed his Motion to Certify a Class.  On March 5, 2018, the Court granted Plaintiff's

Motion to Certify a Class.  On March 19, 2018, One Planet filed a petition to appeal the Court's

Order granting class certification.  On May 3, 2019, the United States Court of Appeals for the

Sixth Circuit denied One Planet's petition to appeal.  On May 24, 2018, One Planet filed a

Motion for Summary Judgment on Plaintiff's claims; the Court ultimately set oral argument on

the Motion for February 13, 2019.  On January 18, 2019, the Parties participated in a mediation

with Bennett Picker, Esq., during which the Parties discussed the potential settlement of the

Action.  On or about February 8, 2019, the Parties tentatively agreed to a potential settlement of

the Action, the key terms of which are memorialized in the Settlement Agreement attached as

Exhibit A to the previously filed Motion for Preliminary Approval of Class Action Settlement

(the "Agreement").  (Doc. 93-1.)

## III.    THE PROPOSED SETTLEMENT

### A.    THE SETTLEMENT CLASS

The proposed Settlement would establish a Settlement Class for settlement purposes only,

defined as:

> All persons in the United States whose residential telephone number was
> registered on the National Do Not Call Registry for more than 30 days, and who,
> from February 10, 2012 through the date of preliminary approval of the
> Settlement Agreement, received more than one telephone solicitation allegedly
> from The Lead House within any twelve-month period. This described class is
> limited to those 9,407 persons whose phone numbers were included in the records
> produced by Lead House and whose numbers were identified in Plaintiff's
> Expert's Report, but excluding Class Counsel, Defendant's Counsel, and any
> judge before whom the Action is assigned and members of the immediate family
> of such judge.

(Agreement ¶ 1.26.)

3

B.    **SETTLEMENT RELIEF**

1.    **Class Member Relief: Settlement Fund**

The proposed Settlement establishes a non-reversionary $752,560 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) court-approved attorneys' fees of up to one-third of the total amount of the Settlement Fund; (4) Plaintiff's out of pocket expenses not to exceed $37,431.63; and (5) a court-approved incentive award to the Class Representative of up to $10,000.

Each of the Settlement Class Members that submitted a valid claim shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all Settlement Administrative Expenses, Incentive Awards, and Fee awards are paid out of the Settlement Fund.[2]  (*Id*., ¶ 2.2.) If all the attorneys' fees, expenses, incentive award, and Settlement Administration Expenses are approved as requested, Plaintiff's counsel estimate that the average Settlement Class Member payment will be approximately $831.74, which exceeds the estimate provided to Settlement Class Members in the Notice[3].  (Ex. 2, Schachter Decl., ¶ 18.)  The Settlement provides for a potential second distribution for any funds remaining due to uncashed settlement distribution

---

[2] As of the date of the filing of this Motion, the Settlement Administrator had preliminarily determined that 456 valid claims were submitted.  (Ex. 2, Schachter Decl., ¶ 15.)  Auditing of the claim population is in process, and Class Counsel will provide an update at the Final Fairness Hearing.

[3] Because the estimated payment amount to each Settlement Class Member exceeds $600, additional tax reporting obligations are imposed upon the Settlement Administrator.  As a result, the Settlement Administrator will issue payments in the amount of $599 to each of the Settlement Class Members that submitted a valid claim along with a request to return a 1099-MISC form in order for the Settlement Administrator to release the balance of the estimated payment ($232.74).  In the event that all Settlement Class Members who submitted valid claims do not provide the requisite 1099-MISC form, the balance of their settlement payments will be divided equally amongst the remaining Settlement Class Members who do submit valid 1099-MISC forms.

checks to those Settlement Class Members that cashed their first distribution checks, to the extent administratively feasible.  (Agreement ¶ 2.2(c).)

### 2. Class Representative Incentive Award

If approved by the Court, the Plaintiff will receive an incentive award of $10,000 from the Settlement Fund.  (*Id.* ¶ 8.3.)  This award will compensate Plaintiff for his time and effort and for the risk he undertook in prosecuting this case.

### 3. Attorneys' Fees and Costs

If the Settlement receives final approval, Plaintiff's counsel will receive one third of the Settlement Fund ($250,853.33) in addition to out of pocket expenses of $37,431.63.  (*Id.* ¶ 8.1.) As Plaintiff's counsel addressed in their fee application, an award of attorneys' fees and costs will compensate Plaintiff's counsel for their efforts on behalf of the class.  (Dkt. 95.)  Plaintiff's proposed attorney fee award and expenses were plainly disclosed to the Settlement Class in the proposed notice, and no objections were lodged.  The proposed fee award is wholly consistent with other cases.  (*Id.,* pp. 14-15.)

### 4. Remaining Funds

Any amount remaining in the Settlement Fund that is no longer administratively feasible to distribute after paying all approved Claim Forms, Settlement Administration Expenses, and any Fee Award and Incentive Award will escheat to the State of Ohio.  This will only include the amount remaining from uncashed checks, to the extent further distribution to the Settlement Class is not administratively feasible.

### C. NOTICE AND SETTLEMENT ADMINISTRATION

All Settlement Administration Expenses will be exclusively paid from the Settlement Fund.  (Agreement ¶ 1.24.)  The Court appointed the nationally-recognized class action administration firm A.B. Data to be the Settlement Administrator.  (Doc. 94, ¶ 8.)  The Settlement Administrator's duties included: (1) sending the Class Notice to the Settlement Class

pursuant to the Settlement; (2) responding to inquiries regarding the settlement process from persons in the Settlement Class; (3) processing and evaluating Claim Forms, Requests for Exclusion, and objections; and (4) issuing Benefits Checks and Cash Benefits.  A.B. Data has completed its notice and claims administration obligations.  (Ex. 3, Murphy Decl., ¶ 8.)

### D.     OPT-OUT AND OBJECTION PROCEDURES

Persons in the Settlement Class had the opportunity to exclude themselves from the Settlement or object to its approval.  (Agreement ¶ 1.17.)  The procedures and deadlines for filing Requests for Exclusion and objections were conspicuously listed in the Class Notice and on the Settlement Website.  (*See id.* at Exs. 1-3.)  That only two Settlement Class Members opted out of the Settlement and none objected weighs greatly in favor of approval.

### E.     RELEASE

The release is appropriately tailored to this case involving alleged violations similar to those alleged and is limited to those Settlement Class Members identified in the Class List.  In exchange for settlement benefits, all but two Settlement Class Members (who timely opted out) will release Defendants from any and all claims against the Released Parties, arising out of the telemarketing records obtained by Plaintiff through discovery.  (*Id.* ¶ 1.21.)

## IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving disputes.  This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of prolonged litigation.  *See Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *8-9 (E.D. Mich. June 28, 2006) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."); *Enter. Energy Corp. v. Columbia Gas Transmission*

*Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of class actions.").

Federal Rule of Civil Procedure 23(e)(1) requires court approval of any settlement of a certified class action. The procedure for approving a class action settlement includes three steps: (1) the court preliminarily approves the settlement; (2) the members of the class then are given notice of the settlement; and (3) the court then holds a hearing to determine whether the settlement is fair, reasonable, and adequate. *See Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001); *Williams v. Vukovich*, 720 F.2d 909, 921-22 (6th Cir. 1983). With the recent amendment of Rule 23, the Court is additionally required to specifically consider whether the Representative Plaintiff and Class Counsel have adequately represented the Settlement Class in the proceeding to date; whether the proposed Settlement was negotiated at arm's length; whether the proposed relief available to the Settlement Class appears to be adequate, taking into account the costs, risks, and delay of trial and appeal; the anticipated effectiveness of the proposed method for distributing the proposed relief available to the Settlement Class, including the proposed method of processing class-member claims; whether the terms of any proposed award of attorney's fees, including timing of payment, are reasonable; and whether the proposed Settlement treats members of the Settlement Class equitably relative to each other. As is set forth below, Plaintiff submits that all of the requirements of Amended Rule 23 are readily met here.

The Parties request that the Court grant final approval of the Settlement. Plaintiff submits that the proposed Settlement is fair, reasonable, and adequate as is evidenced by the fact that not a single class member objected to the Settlement, and only two requested to be excluded from the Settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice* § 23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).

A.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Here, the Settlement was reached after hard-fought litigation and arduous settlement negotiations with the substantial assistance of Bennett Picker, Esq.  The Settlement provides an immediate and substantial benefit of $752,560 in cash for the benefit of the Class.  Given the complexities of this litigation and the substantial risks of continued litigation, the Settlement represents a very good resolution of this and eliminates the risk that the Class might not recover anything if the litigation were to continue.  There is no question that the Settlement is within the range of what has been found fair, reasonable, and adequate.

B.      FACTORS CONSIDERED IN CONNECTION WITH FINAL
        APPROVAL OF CLASS ACTION SETTLEMENTS SUPPORT
        GRANTING PRELIMINARY APPROVAL

Moreover, reference to certain of the factors considered by courts in connection with final approval of class action settlements lend support to the proposition that the Settlement is well within the range of possible approval.  In determining whether a proposed settlement is fair, adequate, and reasonable, the Sixth Circuit and the district courts therein have established factors for a court to consider, including: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the risk of fraud or collusion; (4) the stage of the proceedings and the amount of discovery completed; (5) the judgment of experienced trial counsel; (6) the nature of the negotiations; (7) the objections raised by the class members; and (8) the public interest.  *Williams*, 720 F.2d at 921; *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001).  Courts have emphasized that these factors should not be applied in a "formalistic" fashion. *Thompson v. Midwest Found. Indep. Physicians Ass'n*, 124 F.R.D. 154, 157 (S.D. Ohio 1988) ("A class action settlement cannot be measured precisely against any particular set of factors, however, and the court may be guided by other factors, 'the relevancy of

8

which will vary from case to case.'") (citation omitted). These factors largely overlap with the additional requirements imposed by Amended Rule 23. The factors are evaluated below.

> ### 1. Plaintiff's Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement

The initial factor that courts consider in reviewing a class action settlement is the likelihood of success on the merits balanced against the amount and form of relief offered in settlement. *See Williams*, 720 F.2d at 922. While Plaintiff's counsel believes that the claims asserted in the litigation have merit, they recognize and acknowledge the expense, length, and uncertainty of continued proceedings necessary to prosecute the litigation against Defendant through summary judgment, trial, and appeals. Specifically, in this case, the Defendant was expected to challenge the ascertainability of the class and to argue that determining which outbound calls were related to telemarketing and which were not would create predominance concerns that would require de-certification. The Defendant was also expected to argue that class members consented to receive the telemarketing calls at issue. Plaintiff's counsel also has taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. In addition, Plaintiff's counsel is mindful of the inherent problems of proof under, and possible defenses to, the violations asserted in the litigation. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373-74 (S.D. Ohio 2006) (exploring "the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provides justifications for th[e] Court's approval of the proposed Settlement").

At least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4

(N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case—between $100 and $1,000 per violation—would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

At summary judgment and trial, many of the determinative issues would be subject to expert testimony. While Plaintiff had retained a highly qualified expert, there is no telling which expert's testimony the Court or jury would accept. *See Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829, at *6 (S.D. Ohio Jan. 26, 2011) ("Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a 'battle of the experts.' The Settlement Agreement reached by the parties avoids the risks attendant to this 'battle of the experts,' which could result in a ruling against Named Plaintiffs and the Settlement Class.").

> ### 2. The Complexity, Expense, and Likely Duration of the Litigation.

This litigation has been pending now for several years. Over the course of those years, Plaintiff's counsel took extensive discovery, obtained class certification and the appeal of certification, and was prepared to address Defendant's Motion for Summary Judgment. This is not a case where a settlement was reached quickly and without fulsome investigation. The ultimate outcome of this matter at trial and then on appeal, however, was uncertain. The Class faced a considerable risk of obtaining no settlement. The Settlement avoids these risks and provides immediate and certain relief. *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice*

10

*Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court"); *In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand.").

### 3. The Risk of Fraud or Collusion and the Nature of Negotiations.

The terms of the proposed Settlement are the product of extensive arm's-length negotiations between the parties, with the substantial assistance of an experienced mediator. During these negotiations, Plaintiff's counsel zealously advanced their position and were fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of the Settlement Class. Defendant was also represented by highly capable and experienced lawyers. Counsel for the Defendant zealously represented Defendant during the settlement negotiations and throughout the litigation. The Settlement was reached only after extensive arm's-length negotiations by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of each party's respective claims and defenses. Indeed, Plaintiff's counsel carefully considered and evaluated a number of factors, including the relevant legal authorities and evidence pertaining to the claims asserted against Defendant, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and any appeals and subsequent proceedings. After considering these factors, Plaintiff's counsel reasonably concluded that the Settlement is not only fair, reasonable, and adequate but is a very good result for the Settlement Class.

### 4. The Stage of the Proceedings and the Amount of Discovery Completed

Additionally, the stage of the proceedings supports approval of the Settlement. *Telectronics*, 137 F. Supp. 2d at 1015. By the time the Settlement was reached, Plaintiff's

counsel had sufficient knowledge and a significant understanding of the merits of the claims alleged in the litigation and the defenses that would be asserted by Defendant to intelligently determine that the Settlement is in the best interest of the Settlement Class.  Here, fact discovery was nearly complete.  The Plaintiff had retained an expert and provided a report.  Plaintiff and his counsel's vigorous representation of the putative class readily satisfies the requirement of Amended Rule 23(e) of adequate representation of the proposed Settlement Class.

In addition, the Parties participated in an arm's-length mediation with Attorney Picker where the strengths and weaknesses of the claims asserted were fully vetted.  Prior to the mediation, the parties exchanged detailed mediation statements that further highlighted the factual and legal issues in dispute.  The "arm's-length" negotiation requirement of Amended Rule 23(e) is also satisfied.

## 5. The Judgment of Experienced Trial Counsel.

Plaintiff's counsel has significant experience and expertise in TCPA and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country, and they support the Settlement.  *See* Declarations of Brian Murphy, Edward A. Broderick, and Matthew P. McCue*, attached hereto as Exhibits 3 through 5, respectively.  The Sixth Circuit has determined that a court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."  *See Williams*, 720 F.2d at 922-23; *Telectronics*, 137 F. Supp. 2d at 1015 ("The Court heeds the recommendation of such experienced, professional, and competent Counsel."); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are

entitled to great deference."), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

      Based on their thorough evaluation, Plaintiff's counsel believes the benefits of the Settlement merit approval, particularly when weighed against the expense, risks, and uncertainty of continued litigation.  While there is always a chance of a greater recovery down the road, such a result is by no means guaranteed, and any such expectation must be tempered by a recognition that any compromise involves concessions on the part of all Parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). As the Fifth Circuit noted in *Cotton v. Hinton*, "[t]he trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained ….'"  559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted).

      In light of the risks of continued litigation laid out above, and the determination of experienced counsel that the Settlement represents an excellent result for the class, Plaintiff's counsel respectfully submit that the proposed Settlement meets the requirement of Amended Rule 23(e) that the proposed relief be found adequate, taking into account the costs, risks, and delay of trial and appeal.

## V.    THE NOTICE AND FUND DISTRIBUTION PROGRAM WAS APPROPRIATE

      Rule 23(e) governs notice requirements for settlements or "compromises" in class actions.  The Rule provides that a class action shall not be dismissed or compromised without the approval of the court and that notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.  Fed. R. Civ. P. 23(e).  In addition,

the rule provides, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

Here, the Parties negotiated the content of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") that was disseminated to all persons who fall within the definition of the class and whose names and addresses can be identified.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  According to the Manual for Complex Litigation, § 21.312, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The Class Notice, attached as Exhibits 3 and 4 to the Settlement Agreement, satisfied all of the above criteria.  The Notice described the nature of the litigation; set forth the definition of the class; stated the class claims; and disclosed the right of Class Members to exclude themselves from the class, as well as the deadline and procedure for doing so, and warned of the binding

effect of the settlement approval proceedings on Class Members who do not exclude themselves. In addition, the Notice described the Settlement; set forth the Settlement Fund; explained the distribution and claims process; stated the Parties' disagreement over damages and other issues; and set out the amount of attorneys' fees and expenses that Plaintiff's counsel would seek in connection with final settlement approval.  The Notice also provided contact information for the Settlement Administrator and summarized the reasons the Parties proposed the Settlement.  The Notice also disclosed the date, time, and place of the formal fairness hearing, and the procedures for objecting to the Settlement and appearing at the hearing.  The contents of the Notice, therefore, satisfied all applicable requirements.  The Settlement Agreement calls for distribution of Benefit Checks within 60 business days after the Final Approval Date.  (Agreement ¶ 2.2(b).)

All Settlement Class Members that submitted timely and valid claim forms will be entitled to an equal payment made by the Settlement Administrator experienced and proficient in administering class settlements, thereby satisfying the twin requirements of Amended Rule 23(e) that the method for distribution of payments be effective, and that the proposed Settlement treat Settlement Class Members equitably relative to each other.

## VI.    CONCLUSION

For the reasons set forth above and the entire record in this litigation, the Settlement warrants this Court's final approval, and Plaintiff's counsel respectfully requests that the motion be granted.

Respectfully submitted,

/s/ **Brian K. Murphy**
Brian K. Murphy, Trial Attorney (0070654)
Joseph F. Murray (0063373)
Geoffrey J. Moul (0070663)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 *facsimile*
E-mail: murphy@mmmb.com
         murray@mmmb.com
         moul@mmmb.com

Edward A. Broderick (Admitted *Pro Hac Vice*)
Broderick Law P.C.
99 High Street, Suite 304
Boston, MA  02110
(508) 221-1510
E-mail: ted@broderick-law.com

Matthew P. McCue (Admitted *Pro Hac Vice*)
Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
Telephone: 508.655.1415
Facsimile: 508.319.3077
E-mail: mmccue@massattorneys.net

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, hereby certify that on February 14, 2020, I caused the foregoing to be filed via the

Court CM/ECF filing system which will effect service on all counsel of record.

/s/ **Brian K. Murphy**
Brian K. Murphy